# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH JR., | : | CIVIL NO. 3:10-CV-749 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG A. LOWE, et al., | : | |
| Defendants | : | |

## MEMORANDUM
### Background

This pro se civil rights action was initiated by Richard C. Smith, Jr., an inmate presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon). An Amended Complaint was filed on April 14, 2010. See Doc. 9.

Named as Defendants are Warden Craig Lowe who is employed at Plaintiff's prior place of confinement, the Pike County Correctional Facility, Lords Valley, Pennsylvania; PrimeCare Medical, Inc.) and three of its employees: Physician's Assistant Jennifer Mroz; Doctor Deborah Wilson; and Medical Administrator Patty Bunting (hereinafter PrimeCare Defendants). PrimeCare is described as having been responsible for Plaintiff's medical care during the course of his Pike County incarceration.

Plaintiff states that upon being admitted into the Pike County Correctional Facility, he advised the prison medical staff that he suspected that he might have Hepatitis.[1] On March 18, 2009, Smith requested to be tested for Hepatitis. His request was approved and testing which was performed the next day indicated that he had Hepatitis C "with four times higher levels than

---

[1] Plaintiff explains that he was suspicious because he had shared needles with his girlfriend, who was subsequently diagnosed with Hepatitis.

normal."[2] Doc. 9, ¶ 9. Despite having had a positive test result, Smith asserts he "has not received any treatment at all." Id. He adds that Defendant Physician's Assistant Mroz told him that there was no available medication and that he should follow up with a doctor following his release.[3]

The Amended Complaint next claims that during February, 2009 Plaintiff noticed that his left testicle was enlarged. On March 18, 2009, he requested that his condition be examined. The following day Plaintiff was seen by Defendant Medical Administrator Bunting who directed that ultrasound testing be performed. The ultrasound was performed on March 23, 2009 and confirmed that Plaintiff had a hernia.[4] On April 30, 2009, an unidentified physician's assistant allegedly told Plaintiff that his hernia required surgery, "but there was nothing they could do." Id. Smith indicates that although the size of his hernia kept increasing and was painful, he was not being provided with adequate treatment for said condition. The Amended Complaint further notes that Smith was provided ineffective pain medication and was not provided with a hernia belt until February 9, 2010.[5] Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages for the alleged deliberate indifference to his medical needs..

Defendant Lowe previously filed an answer to the Amended Complaint. The PrimeCare

---

[2] A BioReference Laboratories Report which is attached to the Amended Complaint confirms that Smith was given a Hepatitis C test on March 18, 2009 which came back positive the following day. See Doc. 9, Exhibit A-3.

[3] Exhibit B-3 of the Amended Complaint, a response to an administrative grievance, indicates that Smith underwent multiple blood testing to monitor his liver function.

[4] A copy of a diagnostic scrotal ultrasound study revealed that Smith had a small right hydrocle and a possible small left spermatocele. See id. at Exhibit C-3.

[5] Plaintiff was also issued medical restrictions giving him lower bunk status as well as restricting him from gym and institutional employment. See id. at Exhibit F. He was also advised to wear briefs as opposed to boxers.

Defendants timely submitted a motion to dismiss the Amended Complaint (Doc. 40) for failure to state a claim upon which relief may be granted. Plaintiff has not filed an opposing brief nor sought an enlargement of time in which to do so. Consequently, the pending motion to dismiss will be deemed unopposed.

## Discussion

### Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct 1937, 1949 (2009). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Twombly, 550 U.S. at 556. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562.

A civil rights complaint should allege the conduct violating plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950. see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). It is additionally noted that pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Personal Involvement**

The Moving Defendants assert that Defendant PrimeCare cannot be held liable for any actions attributed to its employees under a theory of respondeat superior. Moreover, since there is no indication that Plaintiff was harmed as the result of any unconstitutional PrimeCare policy or custom, said Defendant is entitled to entry of dismissal. See Doc. 41, p. 11. In a similar argument, they contend that because there are no allegations of personal involvement set forth against Dr. Wilson in the Amended Complaint, she is likewise entitled to entry of dismissal.

A plaintiff, in order to state an actionable civil rights claim under § 1983, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in

4

the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Under the standards developed in Rode, any attempt by Smith to establish liability against PrimeCare solely on the basis that it is the employer of Defendants Bunting, Mroz, and Wilson is insufficient for purposes of alleging personal involvement in constitutional misconduct.

In order to establish a viable § 1983 claim against a private corporate entity such as PrimeCare, it must be asserted that said defendant had a policy, practice, or custom which caused injury to the plaintiff. See Adonai-Adoni v. King, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009) (a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); see also Riddick v. Modery, 250 Fed. Appx. 482, 483-84 (3d Cir. 2007). Based upon a careful review of the Amended Complaint, Smith makes no assertion that PrimeCare enacted any policy, custom, or practice which resulted in a violation of his constitutional rights. Accordingly, PrimeCare is entitled to entry of dismissal. See Carpenter v. Kloptoski, 2010 WL 891825 * 8 (M.D. Pa. March 10, 2010)(§ 1983 claim against private medical service solely on the basis that it was responsible for providing health care is subject to dismissal). Pursuant to the above discussion, dismissal will be entered in favor of Defendant PrimeCare.

The Moving Defendants next argue that because there are no allegations set forth against Dr. Wilson in the body of the Amended Complaint, she is entitled to dismissal because Plaintiff has

5

failed to allege that she had any personal involvement in the alleged constitutional misconduct. See Doc. 40, p. 10-11.

A review of the Amended Complaint shows that it lists Deborah Wilson as being a Defendant describing her as a doctor employed by PHS at the Pike County Correctional Facility. See Doc. 9, p. 2. Doctor Wilson is not referenced by name anywhere else in the Amended Complaint. There is only a vague general assertion that the "defendants in this matter have the power or authority to schedule any treatments plaintiff is in need of." Id. at p. 3. Although Doctor Wilson's name is mentioned at various times in copies of institutional medical records which are attached as Exhibits to the Amended Complaint, those submissions are insufficient for the purpose of setting forth a § 1983 claim against said Defendant. Accordingly, since the Amended Complaint does not include any factual assertion which could be the basis for a claim against Doctor Wilson, her unopposed request for dismissal will be granted.

**Deliberate Indifference**

As discussed earlier, Plaintiff's claim of deliberate indifference is two-fold. First, Smith alleges that he was not provided with medication for his Hepatitis C. Second, the Amended complaint asserts that Defendants refused to provide him with a needed surgical procedure for his hernia.

The PrimeCare Defendants maintain that Plaintiff was promptly tested for Hepatitis C and after his positive test result, his liver functioning was regularly monitored via blood testing., which was deemed an appropriate course of treatment by the prison medical staff. With respect to his hernia, the PrimeCare Defendants note that ultrasound testing was conducted in a timely fashion. Thereafter, when the test confirmed that Plaintiff had a hernia, he was placed on pain medication,

6

given a hernia belt and appropriate medical restrictions were issued. In conclusion, the PrimeCare Defendants contend that since Plaintiff was afforded prompt and continuous medical treatment for both conditions, Smith's claims at best constitute disagreement with the course of treatment provided, allegations which cannot be pursued under § 1983.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill, 372 F.3d at 235-36; Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.'" Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. It is noted that the PrimeCare Defendants' pending motion does not argue that Smith has failed to satisfy the serious medical need requirement.

The Supreme Court has established that the proper analysis for deliberate indifference is

7

whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Plaintiff clearly acknowledges that when he requested to be tested for Hepatitis C, the proper test was promptly provided. Likewise, when he complained of left testicle pain, an ultrasound test was immediately ordered. Hence, this is clearly not a case where initial treatment and/or testing was denied or improperly delayed. Smith also does not take issue with the diagnosis of Hepatitis C or hernia which were rendered by the PrimeCare Defendants.

Rather, with respect to his Hepatitis C, Smith raises sketchy allegations that he was denied proper medication for his condition. However, his Amended Complaint makes no contention that any prescribed course of treatment including medication was denied or delayed for non-medical reasons. Likewise, the attached institutional medical records do not include any mention that

8

medication was prescribed for Smith's condition. As previously noted, the PrimeCare Defendants assert that following the positive test result, regular blood draws for the purpose of monitoring Plaintiff's liver functions were conducted and no additional treatment was deemed necessary. Accordingly, based upon the nature of the factual assertions set forth in the Amended Complaint, Plaintiff's allegation that certain medication should have been provided to him for treatment of his Hepatitis C simply represents a disagreement over the course of treatment afforded to Smith by the PrimeCare Defendants. His Amended Complaint has not provided any facts which could support an allegation that medication was denied for a non-medical reason, therefore his claim sounds solely in negligence and cannot be pursued under § 1983. Simply put, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections." Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted).

In regards to his hernia treatment, Plaintiff generally contends that on April 30, 2009 he was seen by an unidentified Physician's Assistant who told him that although he needed surgery it would not be provided. He offers no facts as to the basis for that determination by the unidentified speaker.[6] The PrimeCare Defendants counter that Plaintiff was provided with a hernia belt, pain medication and given various medical restrictions. They add that he also received extensive and continuous medical care and once again at best his claim represents a disagreement with the course of non-surgical treatment which he received. See Doc. 41, p. 8.

Based upon an application of Estelle and Durmer to the Plaintiff's pro se Amended Complaint, there are no facts asserted in the Amended Complaint to support a claim that surgical

---

[6] The Amended Complaint also states that unidentified prison superiors told him that the medical staff was "working on something for you." Doc. 9, ¶ 9. Those non-specific remarks simply do not equate to a recommendation for hernia surgery.

9

treatment for Plaintiff's hernia was recommended but improperly delayed for a non-medical reason. The institutional medical records which are attached to the Amended Complaint do not include any discernible recommendation that Smith undergo hernia surgery. Moreover, since Plaintiff was under a physician's care and his institutional medical records do not indicate that surgery was ever recommended, Smith's vague assertion that an unidentified Physician Assistant remarked that Plaintiff should have surgery appears to represent at best a differing unsupported opinion by a less qualified individual which is not sufficient enough to withstand scrutiny under Rule 12(b)(6).[7] There are simply no facts presented by Plaintiff which could adequately support a claim that a medically qualified professional involved in his medical care recommended surgery which was not provided due to a non-medical factor. The unopposed argument for dismissal will be granted.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**

DATED: FEBRUARY 9, 2011

---

[7] It is noted that Plaintiff does not indicate the level of involvement, if any, this unidentified individual had in his care. The unidentified speaker is not clearly attributed with indicating that surgery was being denied for a non-medical reason.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH JR., | : | CIVIL NO. 3:10-CV-749 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG A. LOWE, et al., | : | |
| Defendants | : | |

**ORDER**

AND NOW, to wit, this 9th day of February, 2011, in accordance with the accompanying Memorandum, it is hereby **ORDERED** that:

1. The PrimeCare Defendants' motion to dismiss the Amended Complaint (Doc. 40) is **GRANTED**.

2. Dismissal is entered in favor of Defendants PrimeCare Medical, Inc., Physician's Assistant Jennifer Mroz; Doctor Deborah Wilson; and Medical Administrator Patty Bunting.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**

11