IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH JR., | : | CIVIL NO. 3:10-CV-749 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG A. LOWE, et al., | : | |
| Defendants | : | |

# MEMORANDUM
## Background

This pro se civil rights action was initiated on April 8, 2010 by Richard C. Smith, Jr., an inmate presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon). An Amended Complaint was filed on April 14, 2010. See Doc. 9.

Named as Defendants are Warden Craig Lowe who is employed at Plaintiff's prior place of confinement, the Pike County Correctional Facility, Lords Valley, Pennsylvania; PrimeCare Medical, Inc., and three of its employees: Physician's Assistant Jennifer Mroz; Doctor Deborah Wilson; and Medical Administrator Patty Bunting (hereinafter PrimeCare Defendants). PrimeCare is described as having been responsible for Plaintiff's medical care during the course of his Pike County incarceration.

By Memorandum and Order dated February 9, 2011, dismissal was entered in favor of the PrimeCare Defendants. See Doc. 59. Presently pending is a motion for summary judgment by Remaining Defendant Warden Lowe. See Doc. 62. Plaintiff has not filed an opposing brief to Lowe's motion nor sought an enlargement of time in which to do so. Consequently, the motion for summary judgment will be deemed unopposed.

Upon his October 31, 2008 admission into the Pike County Correctional Facility, Plaintiff admitted that he was a daily user of heroin. On or about March 10, 2009,[1] Smith expressed a concern to prison staff that he might have contracted Hepatitis because he shared needles with his girlfriend who had been diagnosed with Hepatitis C. Based upon those fears, Plaintiff requested to be tested for Hepatitis.

Prison officials approved Smith's request and testing which was performed on or about March 18, 2009 indicated that he had Hepatitis C "with four times higher levels than normal."[2] Doc. 9, ¶ 9. Despite this positive test result, the Amended Complaint asserts that Smith "has not received any treatment at all." Id. It is next alleged that Defendant Physician's Assistant Mroz told him that there was no available medication and that he should follow up with a doctor following his release.[3]

The Amended Complaint also claims that during February, 2009 Plaintiff discovered that his left testicle was enlarged. On March 18, 2009, he requested that his condition be examined. The following day Plaintiff was seen by Defendant Medical Administrator Bunting who directed that ultrasound testing be performed. The ultrasound was performed

---

[1] Defendant Lowe indicates that the date of Smith's request for testing was March 10, 2009 while Plaintiff claims that it was March 18, 2009.

[2] A BioReference Laboratories Report which is attached to the Amended Complaint confirms that Smith was given a Hepatitis C test on March 18, 2009 which came back positive the following day. See Doc. 9, Exhibit A-3.

[3] Exhibit B-3 of the Amended Complaint, a response to an administrative grievance, indicates that Smith underwent multiple blood testing to monitor his liver function.

on March 23, 2009 and allegedly confirmed that Plaintiff had a hernia.[4] On April 30, 2009, an unidentified physician's assistant allegedly told Plaintiff that his hernia required surgery, "but there was nothing they could do." Id. Smith indicates that although the size of his hernia kept increasing and was painful, he was not being provided with adequate treatment for said condition. The Amended Complaint further notes that Smith was provided ineffective pain medication and was not provided with a hernia belt until February 9, 2010.[5]

With respect to Warden Lowe, the Amended Complaint generally asserts that the Remaining Defendant was "legally responsible" for the overall operation of the Pike County Correctional facility. Doc. 9, ¶ 4. The only other mention of Lowe in the Amended Complaint is Smith's vague assertion that every time he came in contact with one of the superiors at the prison he complained about his lack of medical treatment and was simply told that the medical staff was "working on something for you." Id. at ¶ 9. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages for the alleged deliberate indifference to his medical needs.

It is undisputed Warden Lowe denied grievances filed by Smith regarding his medical care. Specifically, on January 27, 2010 Plaintiff filed a grievance regarding his medical care for his swollen left testicle. He filed additional grievances on February 4, 2010, February 9,

---

[4] A copy of a diagnostic scrotal ultrasound study revealed that Smith had a small right hydrocle and a possible small left spermatocele. See id. at Exhibit C-3.

[5] Plaintiff was also issued medical restrictions giving him lower bunk status as well as restricting him from gym and institutional employment. See id. at Exhibit F. He was also advised to wear briefs as opposed to boxers.

3

2010, March 11, 2010 and March 21, 2010 indicating that he wanted a hernia operation and medication for his Hepatitis C. See Doc. 64, pp. 12-13.

After prison staff conferred with PrimeCare, Warden Lowe denied relief on the grounds that Plaintiff had been provided with: multiple visits with the prison doctor, medications, a hernia belt, blood testing was being performed to monitor his liver functions and the prisoner's treating physician and physician assistant had determining that Plaintiff was being provided with appropriate treatment. See id.

## Discussion
### Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Injunctive and Declaratory Relief**

Warden Lowe's initial argument asserts that Plaintiff's transfer from the Pike County Correctional Facility has mooted his requests for injunctive and declaratory relief. See Doc. 64, p. 17.

Federal courts can only resolve actual cases or controversies, U.S. Const., Art. III, § 2, and this limitation subsists "through all stages of federal judicial proceedings. . . ." Id. see also Steffel v. Thompson, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy)" (emphasis in

original). An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)); see also Gaeta v. Gerlinski, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

Furthermore, an inmate's claim for injunctive and declaratory relief fails to present a case or controversy once the inmate has been transferred. Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

On October 18, 2010, Plaintiff notified this Court that he had been transferred to the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill). See Doc. 53. His subsequent filings in this matter show that he was thereafter transferred to SCI-Huntingdon. See Doc. 58. There is no indication that Smith will be returned to the Pike County Correctional Facility in the foreseeable future. Accordingly, Plaintiff's action to the extent that it seeks injunctive and declaratory relief based upon actions which occurred during his prior confinement at the Pike County Correctional Facility is subject to dismissal on the basis of mootness.

**Personal Involvement**

Defendant Lowe next asserts that he cannot be held "liable vicariously." Doc. 64, p.

7. Moreover, the Remaining Defendant argues that there is no indication that Plaintiff was harmed as the result of any unconstitutional Pike County policy or custom. See id., p. 23.

A plaintiff, in order to state an actionable civil rights claim under § 1983, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v.

7

Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against Warden Lowe solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Under the standards developed in Rode and Alexander, any attempt by Smith to establish liability against Warden Lowe solely on the basis that of his supervisory capacity within the Pike County Correctional Facility or entirely premised an alleged lack or inadequate response to Plaintiff's institutional requests is insufficient for purposes of alleging personal involvement in constitutional misconduct.

The Remaining Defendant next argues that Plaintiff does not assert that his constitutional rights were violated as the result of a Pike County Prison policy, custom, or practice as contemplated under Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). Consequently, Lowe concludes that there is no basis for liability against Warden Lowe or Pike County. See Doc. 64, pp. 23-25. Based upon a review of the Amended Complaint, Smith has not identified any prison policy which interfered with his right to be provided with medical treatment.

A municipal body or other local governmental unit, not part of a state for Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983. Monell, 436 U.S. at 690-91("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.") "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

However, it has been repeatedly held that a municipality may not be subjected to § 1983 liability on a theory of respondeat superior. Bryan County, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, "... a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bryan County, 520 U.S. at 403; Beck, 89 F.3d at 971. In Bryan County, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> ... [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff

9

> must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id. at 404; see Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has held that a municipality can be held liable under § 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 694).

It is apparent from the undisputed record that Smith has not set forth any claim that his constitutional rights were violated as a result of any Pike County Correctional Facility policy or custom. Moreover, the mere fact that the PrimeCare medical staff employed at the prison allegedly failed to provide him with adequate medical care does not by itself set forth a viable claim that the prison employed a policy, custom, or practice of interference with medical care. Accordingly, there is no basis for liability against Warden Lowe under Monell.

**Deliberate Indifference**

As previously discussed by this Court's February 9, 2011 Memorandum and Order, Plaintiff's claim of deliberate indifference is two-fold. First, Smith alleges that he was not provided with medication for his Hepatitis C. Second, the Amended Complaint asserts that

Defendants refused to provide him with a needed surgical procedure for his hernia.

Warden Lowe claims entitlement to entry of summary judgment on the basis that he is a non-medical defendant who followed up with PrimeCare, the prison's medical provider on several occasions to ensure that Smith was receiving proper medical care. See Doc. 64, p. 20.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill, 372 F.3d at 235-36; Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.'" Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir.

11

2008)(quoting <u>Monmouth Cty. Corr. Inst. Inmates,</u> 834 F.2d at 347. It is noted that the pending summary judgment motion by Warden Lowe does not argue that Smith has failed to satisfy the serious medical need requirement. Thus, that threshold requirememnt will be deemed satisfied.

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. <u>See id.</u> However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. <u>See id.</u>; <u>Ordonez v. Yost</u>, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

It is undisputed that Warden Lowe is a non-medical professional. The Court of

Appeals for the Third Circuit in <u>Durmer</u> added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See <u>id.</u>

According to the undisputed record, Plaintiff was promptly tested for Hepatitis C and after his positive test result, his liver functioning was regularly monitored via blood testing, which was deemed an appropriate course of treatment by the prison medical staff.

With respect to his swollen left testicle, ultrasound testing was likewise conducted in a timely fashion. The diagnostic scrotal ultrasound study revealed that Smith had a small right hydrocle and a possible small left spermatocele. Plaintiff had multiple followup appointments with his doctor. In addition Plaintiff was given medications, a hernia belt, relieved from prison employment, restricted from gym activities and given a lower bunk assignment. Moreover, Plaintiff was given a surgical consultation on April 28, 2010 and additional ultrasound testing was performed.[6] The surgeon initially recommended a surgical procedure, however, after the taking of another ultrasound the surgeon concluded that surgery was not medically necessary at that time.

There are no facts asserted which could establish that non-medical Defendant Lowe had any personal involvement whatsoever in Plaintiff's medical treatment or related

---

[6] It is noted that those actions took place after the filing of this action on April 8, 2010.

decisions. Plaintiff clearly acknowledges that when he requested to be tested for Hepatitis C, the proper test was promptly provided. Likewise, when he complained of left testicle pain, an ultrasound test was immediately ordered. Hence, this is clearly not a case where initial treatment and/or testing was denied or improperly delayed.

Second, it is undisputed that Smith received regular care from his treating physician, and physician's assistant, he was also provided with a surgical consultation and numerous diagnostic tests. There are no allegations that any prescribed course of treatment for Smith including medication was denied or delayed for non-medical reasons by Warden Lowe. Finally, based upon the undisputed record since Plaintiff was afforded prompt and continuous medical treatment for both conditions underlying this action, his claims at best constitute disagreement with the course of treatment provided. Based on an application of the reasoning employed in <u>Durmer</u> to those undisputed factors, a viable deliberate indifference claim has not been set forth against Warden Lowe. The unopposed motion for summary judgment will be granted.[7] An appropriate Order will enter.

**BY THE COURT:**

<u>s/James M. Munley</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**

DATED: AUGUST 9, 2012

---

[7] In light of the Court's conclusion, a discussion regarding Lowe's remaining summary judgment arguments is not required.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH JR., | : | CIVIL NO. 3:10-CV-749 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG A. LOWE, et al., | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 9th day of August, 2012, in accordance with the accompanying Memorandum, it is hereby **ORDERED** that:

1. Remaining Defendant Craig Lowe's motion for summary judgment (Doc. 62) is **GRANTED**.

2. Summary judgment is entered in favor of Defendant Lowe.

3. The Clerk of Court is directed to **CLOSE** the case.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court